## MID–SOUTH INDUSTRIES, INC.

v.

## MARTIN MACHINE & TOOL, INC., et al.

Court of Appeals of Tennessee, Western Section, at Nashville.

Dec. 2, 2009 Session.

March 19, 2010.

Application for Permission to Appeal Denied by Supreme Court Oct. 18, 2010.

**22**

Dan R. Alexander, Nashville, Tennessee, for the appellant, Martin Machine & Tool, Inc.

Beau E. Pemberton, Dresden, Tennessee, for the appellant, Spydell Davidson.

Jonathan C. Stewart, Nashville, Tennessee, for the appellee, Mid–South Industries, Inc.

Edmund W. Turnley, Nashville, Tennessee, for the appellees, Milina Cramb and Clayton V. Cramb, III.

## OPINION

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

When Mid–South ceased operation of its metal working business, the defendants purchased several pieces of equipment at auction, and the parties entered into an agreement whereby Mid–South would store the equipment until the defendants could resell it, and the parties would split the profits. After Mid–South notified the defendants that its property was being sold, the parties conducted a second auction. The defendants failed to remove their unsold equipment, and Mid–South filed suit. Defendant Martin Machine filed a counterclaim. The trial court awarded Mid–South $63,000 for equipment storage, and it awarded Martin Machine and Defendant Spydell Davidson $80,088.02 for "unrecovered costs" and $32,000 for the use of a forklift. The parties raise numerous issues on appeal. We affirm the trial court's award of $63,000 to Mid–South for storage costs, specifically finding that such award does not include storage of three pieces of equipment at issue. We further affirm the trial court's dismissal of the other parties (the Crambs), its finding that there was no breach of contract, and its offset of the defendants' recovery by $23,476. Regarding the trial court's award of $80,088.02 to the defendants, we find that Martin Machine's claim for lost profits is barred by the statute of limitations, but that its claims for magazine advertising, direct labor related to equipment, and auction costs are not. Thus, we remand to the trial court for a determination of the basis of the $80,088.02 award. We find that the trial court applied the appropriate measure of damages in valuing the improperly detained forklift, but we remand to the trial court to determine the appropriate number of months on which the award should be based. We reverse all awards to Mr. Spydell Davidson. Finally, we find that the trial court impliedly denied the defendants' request for dismissal, and that the defendants waived the issue of fraud.

### I. Facts & Procedural History

In 1996, Mid–South Industries, Inc. ("Mid–South") ceased daily operations of its metal working business, and it conducted an auction on May 15, 1996, to sell its equipment. Defendant Martin Machine and Tool, Inc., ("Martin Machine") through

its vice president Defendant Spydell Davidson purchased numerous pieces of equipment at the auction. Mid–South, through its president Clayton V. Cramb, Sr.,[1] and Martin Machine entered into a contract whereby Mid–South would store the purchased equipment until Martin Machine could resell it, and both parties would equally share the profits. The agreement provided in part:[2]

> All costs, such as purchase of equipment, cleanup, repairs, loading and handling, advertising, administrative, and insurance on the equipment will be the responsibility of Martin Machine and Tool, Inc. The storage of the equipment will be handled by Mid–South Industries, Inc. for it[ ]s 50% of any profit.
>
> As the two parties enter into this agreement voluntarily, either party may terminate this agreement on terms agreeable to both parties.

Mr. Cramb notified Mr. Davidson by telephone on June 8, 1999, that Mid–South's property was being sold. On June 14, 1999, Mr. Davidson faxed a letter to Mr. Cramb as follows:

> Concerning our telephone conversation this morning, it is our belief the best way to get the equipment out of the building is to schedule an auction which will take six weeks to clean up, set up, advertise and sell. So sale date can be July 27th.
>
> . . . .
>
> We want to proceed in the direction most beneficial to you. So please advise the way you and your prospects would like us to move.
>
> We will be pleased to consider any other direction possible that may be more ben-

eficial for you. We enjoy doing business beneficial to all.

Mr. Cramb responded the following day:

> As per our telephone conversation of June 8, 1999, I notified you that my buildings and property are being sold. However, we do not have a closing date at this time. I have not been able to contact the buyers to try to find out an exact date. However, as a part of my sale agreement, it is necessary for the equipment to be moved and I have only been given two weeks after closing to do so. The suggestion you made in your fax may not get the equipment out in a time frame suitable to my sale agreement.
>
> It is not my intention to put you in a position of inconvenience, however, at this time this is the only information I can furnish you. As soon as I have a closing date, I will let you know.

On June 18, 1999, a second agreement was executed, in which the parties granted an auction company permission to auction the equipment owned by Martin Machine and housed by Mid–South in a July 20 auction. The auction took place on July 20, and although some items of equipment were sold, "numerous large pieces" of equipment remained unsold. Finally, on August 30, 1999, Mr. Cramb sent a letter to Mr. Davidson which contained the following language: "This letter is to inform you that as of August 30, 1999, our agreement[s] of May 16, 1996 and June 19, 1999 are terminated."

After allegedly making unsuccessful "repeated requests" for Mr. Davidson to remove his unsold equipment, Mid–South filed a complaint against Martin Machine and Mr. Davidson on June 15, 2004, claim-

---

1. Clayton V. Cramb, Sr. died in January 2002.

2. Both parties presented different versions of the contract. However, the trial court found the contract presented by the Defendants to be the operative agreement.

ing, among other things, breach of contract and *quantum meruit,* and seeking recovery of the reasonable value of the storage Mid–South was forced to provide when the defendants failed to remove the equipment. Martin Machine [3] filed a counterclaim against Mid–South, asserting three causes of action: breach of contract, negligence, and conversion and intentional destruction of property.[4]

Following a three day bench trial, the trial court entered an order awarding Mid–South $63,000 for equipment storage, and awarding Martin Machine and Mr. Davidson $80,088.02 in unrecovered costs and $32,000 for the use of a forklift. The trial court further dismissed Milina Cramb and Clayton Cramb, III, as defendants. Martin Machine and Mr. Davidson appeal.

## II. ISSUES PRESENTED

Appellants have timely filed their notice of appeal and present the following issues for review, restated as follows:

1. Whether the trial court erred in awarding Mid–South damages when Mid–South breached the contract;

2. Whether the trial court erred in awarding Mid–South storage costs when the contract required Mid–South to store the equipment;

3. Whether the trial court erred in not ruling in defendants' favor regarding fraud;

4. Whether the trial court erred in dismissing the Crambs;

5. Whether the trial court erred in not granting the defendants' pretrial motion to dismiss; and

3. Mr. Davidson filed no counterclaim.

4. Martin Machine later amended its counterclaim to include Milina Cramb and Clayton V. Cramb, III, as defendants. According to Mid–South, after the death of Clayton V.

6. Whether the trial court erred in awarding an off-set to Mid–South.

Additionally, Mid–South presents the following issues as restated:

1. Whether Martin Machine's counterclaim should be dismissed pursuant to the statute of limitations;

2. Whether the trial court erred in granting a judgment in favor of Mr. Davidson when he asserted no counterclaim;

3. Whether the trial court erred in granting a judgment in favor of Martin Machine upon a *quantum meruit* theory when Martin Machine asserted no such claim in its pleadings;

4. Whether the trial court erred in offsetting the defendants' recovery based on the storage of three pieces of equipment; and

5. Whether the trial court erred in granting a judgment for defendants for the lost use of a forklift based on rental value.

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R.App. P. 13(d) (2009); *Bogan v. Bogan,* 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson,* 196 S.W.3d 695, 701 (Tenn.Ct. App.2005) (citing *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn. Ct.App.2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.,* 7 S.W.3d

Cramb, Sr., his granddaughter, Milina Cramb, took over "running" the company. Clayton V. Cramb, III, is Clayton V. Cramb, Sr.'s grandson.

581, 596 (Tenn.Ct.App.1999)). When the trial court makes no specific findings of fact, we review the record to determine where the preponderance of the evidence lies. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn.1997) (citing *Kemp v. Thurmond,* 521 S.W.2d 806, 808 (Tenn. 1975)). We accord great deference to a trial court's determinations on matters of witness credibility and will not re-evaluate such determinations absent clear and convincing evidence to the contrary. *Wells v. Tennessee Bd. of Regents,* 9 S.W.3d 779, 783 (Tenn.1999) (citations omitted). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.,* 788 S.W.2d 815, 817 (Tenn.Ct.App.1989)).

## IV. DISCUSSION

### A. Breach of Contract

■ On appeal, the defendants argue that the trial court erred in awarding damages to Mid–South, as Mid–South breached the contract by repudiating the agreement prior to the completion of the contract. In their briefs to this Court, Martin Machine and Mr. Davidson state that the trial court found that Mid–South breached the agreement. The defendants' assertions misstate the trial court's ruling. In its oral ruling, which was incorporated by reference into the order, the trial court stated:

> In the Spring of 1999, the plaintiff, Mr. Cramb, thought he had a sale of his real property and gave the defendant notice of the sale and a notice to move the equipment. The defendant contends that this was a breach of the agreement. *The Court does not agree with that,* but the Court construes that as an effort to terminate the agreement, quote, on terms agreeable to both the parties as that term is used in the contract itself.
>
> . . . .
>
> That Mr. Cramb was sort of figuring his real estate had been on the market for a while. Since it wasn't selling, if the equipment that was in there could sell it would be found money for him. And Mr. Davidson, with all respect and I say this with some degree of affection, probably could find a nickel [sic] where nobody else could. So, if he could make some money where he could, he would.
>
> . . . .
>
> Mr. Cramb wrote Mr. Davidson and purported to terminate the agreement retroactive to August the 30th of 1999. That was not effective to terminate the agreement because it was unilateral . . . and under [the agreement] you could not have unilateral termination of the agreement.
>
> And then further, I don't know how you breach a contract retroactively or if—effective as of a retroactive date.
>
> But Mr. Davidson was not wrong in considering the agreement to have been breached, *although it was not, in fact, a breach,* because I think for all the practical purposes the objective of the enterprise in the first place was largely accomplished after the—second auction in July of 1999, and there's no proof that either party took action in furtherance of the sale of the equipment after . . . that auction.

(emphasis added).

■ The defendants contend that Mid–South's June and August 1999 letters, which they claim notified them that Mid–South "would not complete performance of the 1996 agreement[,]" constituted a unilateral repudiation of the agreement. "In order to serve as an anticipatory breach or repudiation, the words and conduct of the

contracting party must amount to a total and unqualified refusal to perform the contract." *Wright v. Wright*, 832 S.W.2d 542, 545 (Tenn.Ct.App.1991) (citing *Ky. Home Mut. Life Ins. Co. v. Rogers*, 196 Tenn. 641, 270 S.W.2d 188 (1954); *Brady v. Oliver*, 125 Tenn. 595, 147 S.W. 1135 (1911)). "Whether the words and/or actions of the contracting party have risen to the level of repudiation is normally a question of fact to be determined by the trial court." *Id.* (citing *Mitchell v. Marklund*, 238 Cal. App.2d 398, 47 Cal.Rptr. 756 (1965); *Lee v. Thunder Dev., Inc.*, 77 Or.App. 7, 711 P.2d 978 (1985)).

As we stated above, the trial court found Mid–South's actions evidenced "an effort to terminate the agreement, quote, on terms agreeable to both the parties" as permitted in the agreement, rather than an intent to repudiate the parties' agreement. Based on the letters submitted, we cannot say that the evidence preponderates against this conclusion. We agree that the 1999 auction concluded the agreement on terms agreeable to both parties, and thus the August 1999 letter did not repudiate the agreement.

■ The defendants further argue that both because Mid–South breached the parties' contract and because the contract made Mid–South responsible for equipment storage, the trial court erred in awarding Mid–South storage costs of $63,000. As we noted above, the trial court concluded, and we agree, that the contract was amicably concluded in July 1999. Thus, Mid–South was not barred from recovery, as the defendants suggest, as the breaching party. Furthermore, the contract's storage provisions are irrelevant, as the trial court's award of storage costs for eighty-four months—from July 1999 to August 2006 when Mid–South's property was sold—allowed compensation for storage *after* the contract's amicable

conclusion. Accordingly, we find that the trial court's storage award, which was impliedly based on *quantum meruit*, was appropriate.

### B. Motion to Dismiss

■ Next, the defendants argue that the trial court erred in failing to rule on their motion to dismiss for failure to state a claim upon which relief could be granted. Mid–South contends that the defendants waived the issue by raising it as an affirmative defense in their respective answers, rather than in motions. However, we note that Tennessee Rule of Civil Procedure 12.02 provides that "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, crossclaim, or third-party claim, shall be asserted *in the responsive pleading thereto* if one is required," except that certain defenses, including failure to state a claim upon which relief can be granted, *"may* at the option of the pleader be made by motion in writing[.]" (emphasis added).

Although the trial court did not explicitly deny the defendants' requests for dismissal, we find that it impliedly did so by rendering a judgment which afforded Mid–South relief. *See In re Estate of Overton*, No. 03A01–9701–PB–00025, 1997 WL 269473, at *1 (Tenn.Ct.App. May 21, 1997). This Court's review of a trial court's grant or denial of a motion to dismiss was explained in *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714 (Tenn.1997):

A Rule 12.02(6), Tenn. R. Civ. P., motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. In considering a motion to

dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Cook v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 938 (Tenn.1994). In considering this appeal from the trial court's grant of the defendant's motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions *de novo* with no presumption of correctness. Tenn. R.App. P. 13(d); *Owens v. Truckstops of America,* 915 S.W.2d 420, 424 (Tenn. 1996); *Cook, supra.*

The defendants' motions for dismissal are based on their allegations that Mid–South was the first party to breach the contract, that neither defendant was the proximate cause of Mid–South's damages, that Mid–South failed to mitigate its damages, and that Mid–South's negligence bars its recovery.[5] Construing all of the allegations of fact contained within Mid–South's complaint as true, we find that Mid–South properly stated a claim for relief. Thus, we affirm the trial court's implicit denial of the defendants' motions to dismiss.

### C. Fraud

■ Mr. Davidson next argues that the trial court "erred in not ruling in favor of the appellants in this matter ... when the court, as the sole trier of fact, was on notice that the contract used by the Appellee to support [its] original complaint ... was an inoperative and possibly fraudulent

agreement." Although Mr. Davidson concedes that neither he nor Martin Machine specifically alleged fraud, he nonetheless claims that the trial court "had an obligation to investigate and rule on this issue of potential fraud being present," and that this Court should remand the case to allow Mr. Davidson an opportunity to specifically state a cause of action for fraud against Milina Cramb and Mid–South. Mr. Davidson contends that the testimony of Mid–South's document expert "unintentionally proved that the contract used to support [Mid–South's] complaint ... was likely a fraud." He further alleges that "two credible trial witnesses[, Ms. Jane Eakes and Ms. Ann Cherry,] testified that the contract proffered by [Mid–South] was essentially a fraud," and that the trial court "even acknowledged the potential for fraud was forthcoming in this trial." [6]

We disagree with Mr. Davidson's interpretation of the testimony given. Certified document examiner, Ms. Jane Eakes, testified that Mr. Davidson and witness Ann Cherry signed a May 16, 1996 agreement which allowed either party to terminate the agreement. A photocopy of that agreement was made and Clayton V. Cramb, Sr. and witness Milina F. Cramb signed the copy. This copy was attached to Mid–South's complaint. However, language from the May 16, 1996 original agreement was crossed out so that the document provided for termination of the agreement "on terms agreeable to both parties." This crossed-out document was attached to Martin Machine's counter claim, and was found to be the operative document by the trial court. Ms. Ann

---

5. On appeal, the defendants attempt to argue as a basis for dismissal, that the contract attached to Mid–South's complaint was found by the trial court to be an inoperable agreement. This basis was not raised in the trial court, and will not be considered on appeal.

6. However, Mr. Davidson's brief later states that the trial court "never addressed the likelihood of fraud[.]"

Cherry similarly testified that Mr. Davidson signed, and she witnessed the execution of, the agreement allowing termination by either party. After copies were made of that agreement, the parties consented to alterations allowing termination on "terms agreeable to both parties." The testimony cited by Mr. Davidson in support of his argument that the trial "acknowledged the potential for fraud" is as follows:

> [Mid–South's attorney]: Plaintiff calls Jane Eakes to the stand.
>
> [Defendants' attorney]: Your Honor, could I respond to that?
>
> The Court: Yes.
>
> You opened the door, [Mid–South's attorney].

We find no support for Mr. Davidson's argument that either Ms. Eakes or Ms. Cherry, "testified that the contract proffered by [Mid–South] was essentially a fraud[.]" In fact, neither witness used the word "fraud" in her testimony, and Ms. Eakes even pointed out that she was not testifying as to the circumstances surrounding the documents' execution. We likewise do not find the trial court's statement evidences an acknowledgment of potential fraud.

Furthermore, "[a]llegations of fraud must be plead with particularity." *Hermosa Holdings, Inc. v. Mid Tenn. Bone and Joint Clinic, P.C.*, No. M2008–00597–COA–R3–CV, 2009 WL 711125, at *10 (Tenn.Ct.App. Mar. 16, 2009) (citing Tenn. R. Civ. P. 9.02; *Strategic Capital Res., Inc. v. Dylan Tire Indus., LLC*, 102 S.W.3d 603, 611 (Tenn.Ct.App.2002)). As we stated above, the defendants failed to specifically allege fraud, and they have failed to show that the issue was tried by the express or implied consent of the parties. Accordingly, we find that the issue is waived. *See Vintage Health Res., Inc. v. Guiangan*, No. W2008–01288–COA–R3–

CV, 2009 WL 2601327, at *13 n. 22 (Tenn. Ct.App. Aug. 25, 2009).

### D. Dismissal of the Crambs

In its order, the trial court dismissed the claims against Milina Cramb and Clayton V. Cramb, III, because, as it stated orally, "[t]he entire proof before the Court is that all of their actions and activities were done as agents or representatives of Mid–South Industries." On appeal, the defendants argue that the Cramb's conduct was fraudulent and tortious, and thus, even though their actions were taken in their official capacity as agents of Mid–South, they should not be absolved of personal liability. *See Cooper v. Cordova Sand & Gravel Co., Inc.*, 485 S.W.2d 261, 272 (Tenn.Ct.App.1971) (" 'If, however, a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort.' ") (quoting 19 Am.Jur.2d *Corporations* § 1384, pg. 778). The defendants claim that Milina Cramb "perpetrat[ed] a fraudulent agreement upon the trial court" because "she knew that the contract she proffered to support the Appellee's original complaint had problems[.]"

"The elements of fraud are: (1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 40 (Tenn.Ct.App.2006) (citing *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn.Ct.App. 1992)). Even if we were to assume that the defendants could establish the other elements of a fraud claim, we find, at a minimum, that the defendants have failed

to show that they relied upon a misrepresentation made by the Crambs. Assuming arguendo that the Crambs intentionally attached the inoperative contract to Mid–South's complaint, the evidence reveals no reliance by the defendants upon this contract. Instead, the defendants merely offered their own version of the contract. Because the defendants have failed to state a claim for fraud, we affirm the trial court's dismissal of the Crambs.

### E. Statute of Limitations

Prior to the trial in this matter, Mid–South filed a motion to dismiss Martin Machine's counterclaim delineated as a "breach of contract," asserting that the counterclaim was, in reality, a claim for damage to property which accrued more than three years prior to the filing of Martin Machine's counterclaim.[7] Thus, Mid–South argued that it was barred by Tennessee Code Annotated section 28–3–105's three year statute of limitations. The trial court denied Mid–South's motion to dismiss, finding that the gravamen of Martin Machine's counterclaim was breach of contract, and thus, that it was subject to a six year statute of limitations. Mid–South challenges this finding on appeal.

Tennessee Code Annotated section 28–3–109 provides that "[a]ctions on contracts not otherwise provided for" must be brought within six years after the cause of action accrued. However, "[a]ctions for injuries to personal or real property" must be brought within three years from the accruing of the cause of action. Tenn.Code Ann. § 28–3–105. Our Supreme Court has adopted an "object" test to determine which of these two statutes of limitation applies. *Gordon v. Third Nat'l Bank in Nashville,* No. 01A01–9306–COA–CV–00277, 1994 WL 108970, at *1 (Tenn.

Ct.App. Mar. 31, 1994) (citing *Pera v. Kroger Co.,* 674 S.W.2d 715 (Tenn.1984); *Vance v. Schulder,* 547 S.W.2d 927 (Tenn. 1977)). " 'The limitation is not determined by the form of the action, but by its object.' " *Id.* (quoting *Bodne v. Austin,* 156 Tenn. 353, 360, 2 S.W.2d 100, 101 (1928), *superseded by statute on other grounds as stated in Stanbury v. Bacardi,* 953 S.W.2d 671, 674 (Tenn.1997)). Stated another way, "the gravamen of an action, rather than its designation as an action for tort or contract, determines the applicable statute of limitations." *Pera,* 674 S.W.2d at 719. "In determining the gravamen, or real purpose of an action, the court must look to the basis for which damages are sought." *Keller v. Colgems–EMI Music, Inc.,* 924 S.W.2d 357, 359 (Tenn.Ct.App. 1996) (citing *Bland v. Smith,* 197 Tenn. 683, 277 S.W.2d 377 (1955)). On appeal, the parties cite several cases in support of their respective arguments concerning the applicable statute of limitations. We address the seminal cases below.

First, Mid–South cites *Vance v. Schulder,* 547 S.W.2d 927, 928 (Tenn.1977), in which a plaintiff stock owner filed suit against a corporate director, alleging misrepresentations concerning the value of the plaintiff's stock which caused him to sell his stock at less than its fair value. *Id.* The Supreme Court held that the gravamen of the plaintiff's claim was fraud in the inducement of a contract, and thus that it was subject to a three year statute of limitations. *Id.* at 931. In so holding, the Court specifically rejected the argument that monetary loss could not be considered an "injury to property" as set forth in Tennessee Code Annotated section 28–3–105. *Id.* at 932. Mid–South also relies upon *Cumberland & Ohio Co. of Texas, Inc. v. First American National Bank,* 936 F.2d 846 (6th Cir.1991), *cert. denied,*

---

**7.** Martin Machine set forth additional counterclaims which are not subject to this appeal.

502 U.S. 1034, 112 S.Ct. 878, 116 L.Ed.2d 783 (1992), wherein a corporate borrower sued a bank claiming that the bank's "financial pressures and arbitrary deadlines" forced it "to sell off valuable assets at deep discounts." *Id.* at 848. Applying Tennessee law, the Sixth Circuit found applicable the three-year statute of limitations period for injuries to personal or real property. *Id.* at 849. The Court reasoned that as the *Vance* plaintiff's decreased stock value was "injury to his property[,]" so was the "allegedly depressed market price obtained by the [*Cumberland* plaintiff.]" *Id.* As noted by our Supreme Court in *Mike v. Po Group, Inc.*, 937 S.W.2d 790, 795 (Tenn. 1996), the *Cumberland* court found that the alleged wrong in *Cumberland*—economic duress[8]—was indistinguishable from the alleged wrong of deceit in *Vance*.

Martin Machine primarily relies upon the cases of *Alexander v. Third National Bank*, 915 S.W.2d 797 (Tenn.1996) and *Farabee–Treadwell Co. v. Union & Planters' Bank & Trust Co.*, 135 Tenn. 208, 186 S.W. 92 (1916) as discussed in *Alexander*. In *Alexander*, a property owner sued a bank for loaning only $350,000 of the agreed $600,000. 915 S.W.2d 797–98. The plaintiff property owner's alleged damages included additional renovation costs, an increased interest rate, and lost rent resulting from delayed financing. *Id.* at 798. The Court held that because there had "been no injury to the property, but rather interference with the plaintiff's anticipated economic gain from the use of the loan proceeds" the "essential cause of action alleged is breach of contract" and thus, that the applicable statute of limitations was six years. *Id.* at 797, 799. Similarly, in *Farabee–Treadwell*, the plaintiff sued a bank for allegedly failing to loan an agreed amount of money, forcing the plaintiff to sell certain commodities at a loss. Our Supreme Court held that the complaint stated a cause of action for breach of contract, reasoning that the loss "naturally and proximately followed the bank's breach of contract[.]" *Id.* at 799 (quoting *Farabee–Treadwell*, 186 S.W. at 94). Martin Machine argues that it is "in much the same position here as was the plaintiff in *Farabee–Treadwell*" in that it "was forced to mitigate [its] damages by selling the equipment on the open market in a rushed and economically less advantageous sale."

However, Mid–South argues that Martin Machine's reliance upon *Alexander* is misplaced. Mid–South contends that *Vance* and *Cumberland* applied the three-year statute of limitations because in both cases the plaintiff's interest in the property was negatively affected by the allegedly wrongful conduct of the defendant, whereas the six-year statute of limitations was applied in *Alexander* because the plaintiff was merely denied the opportunity to increase his property's value in the future. Thus, Mid–South claims that because Martin Machine's claimed injury was being forced to sell its equipment for less than its current market value,[9] rather than a lost opportu-

---

8. The corporate borrower company alleged that it signed a "Waiver and Release," releasing the bank from any liability for breaching the "working capital loan agreement," under economic duress because the bank agreed to remove its liens only if the company signed the waiver. *Cumberland*, 936 F.2d at 848.

9. In its interrogatory request, Mid–South asked Martin Machine to "specify the nature and precise amount of the damages … alleg-

edly sustained as a result of the breach of contract" set forth in its counterclaim. Martin Machine responded that it had "suffered monetary damages due to breach of contract in the amount of $141,600.00[—]the difference between what the equipment brought at auction versus what it should have brought had it been sold in a commercially reasonable manner." In addition, Martin Machine claimed damages of $95,406, including maga-

nity for future economic gain, the three-year statute of limitations applies.

We acknowledge that the issue of whether Martin Machine's loss due to an "economically less advantageous sale" is actionable as an injury to real property under the tort statute of limitations, or as "economic damage to one's 'pocketbook'" under the contract statute of limitations presents a close question. *See Keller*, 924 S.W.2d at 360. After a review of the relevant case law, we find no case squarely on point with the facts now presented for our review. In both *Vance* and *Cumberland*, relied upon by Mid–South, a finding of real property damage was made and the three-year statute of limitation was applied; however, the gravamen in each was tortious—fraud and economic duress, respectively. Likewise, in *Alexander*, a gravamen of breach of contract was found and the six-year statute of limitation applied, but the Court acknowledged that the plaintiff alleged no damage to the property itself. 915 S.W.2d at 798. We find no case law considering the situation where, as here, the loss clearly falls within "injuries to personal property," but such loss seems to have resulted from an alleged breach of contract. However, we conclude that the primary consideration in this situation is the injury sustained rather than the basis of the action as tortious or contractual. The middle section of this Court has stated:

> [R]egardless of whether a complaint sounds in contract, if the suit seeks to recover damages for injuries to the plaintiff's property, the applicable limitations period is three years as found in Tenn.Code Ann. § 28–3–105.

*Keller*, 924 S.W.2d at 359 (citation omitted). Additionally, the *Keller* Court stated that "actions for damages *resulting* from the breach of contract to a builder of real property are considered actions for damages to property even where they have sued in contract." *Id.* (citation omitted) (emphasis added). Furthermore, in *Williams v. Thompson*, 223 Tenn. 170, 443 S.W.2d 447, 449 (1969) our Supreme Court stated that "although the complainants' bill sounds in contract[,] ... the only injury alleged in the bill is physical injury to the residence" and thus, it applied the three-year statute of limitations despite no indication that the plaintiffs had alleged tortious conduct. As we stated above, Martin Machine's counterclaim sought to recover not only for its loss due to an "economically less advantageous sale[,]" but also for magazine advertising, direct labor related to equipment, equipment costs, and auction costs, all stemming from the 1999 auction. We find that the loss Martin Machine incurred when it sold its equipment for less than what it could have brought at a "commercially reasonable" sale constitutes a "loss in value [which] ... is included within the phrase, 'injuries to personal property'[.]" *Cumberland*, 936 F.2d at 849 (quoting *Vance*, 547 S.W.2d at 932). Thus, because Martin Machine's counterclaim was filed beyond the three-year statute of limitations, an award based on the lost equipment profit is time-barred and any award by the trial court based on this loss is reversed. However, we find that in so far as Martin Machine's counterclaim sought to recover for magazine advertising, direct labor related to equipment, and auction costs, these claims are not injuries to personal property, and thus are governed by the six-year statute of limitations for breach of contract. Unfortunately, the trial court's order fails to delineate its award regarding Martin Machine's counterclaim, instead generally awarding Martin Machine $80,088.02 for

zine advertising, direct labor related to equip-

ment, equipment costs, and cost of auction.

unspecified "unrecovered costs[.]" Accordingly, we must remand to the trial court for a determination of the basis for the $80,088.02 award.

### F. Quantum Meruit

 Next, Mid–South asserts that the trial court erred in awarding Martin Machine $80,088.02 for "unrecovered costs" and $32,000 for the use of a forklift based on a quantum meruit theory when Martin Machine failed to assert a claim for such relief in its pleadings. Although Martin Machine failed to explicitly set forth a quantum theory of recovery, it demanded "general relief" in its answer and counterclaim. "The rule is well settled in this state that under a prayer for general relief the court may grant any other and different relief from that specifically indicated and prayed for which is justified by the pleadings and the proof." *Connecticut Indem. Co. v. DeGalleford*, 225 Tenn. 406, 470 S.W.2d 5, 7 (1971) (citations omitted). This issue is without merit.

### G. Judgment for Mr. Davidson

 Mid–South also claims that the trial court erred in granting any judgment in favor of Mr. Davidson because he asserted no counterclaims in the trial court. "It is a fundamental rule of law that in order to receive relief, a party must plead, request, and prove the relief with the opposing party having the opportunity to offer proof opposing the requested relief." *Britt v. Massengill*, No. W1999–01129–COA–R3–CV, 2001 WL 204209, at *2 (Tenn.Ct.App. Feb. 26, 2001). Mr. Davidson has submitted no brief in reply to Mid–South's response brief in which this issue was raised. Because he failed to

assert any counterclaim and he has made no argument before this Court that his entitlement to relief was tried by consent, we reverse the trial court's awards to Mr. Davidson.[10]

### H. Forklift

 In its order, the trial court awarded Martin Machine $32,000 for the use of a forklift. Mid–South argues that this award was error as "[t]he evidence clearly showed that the forklift ... was left at the Mid–South site by Davidson for use by Mid–South and its agents. This was an unconditional loan of the forklift and it was loaned free of any charge." Alternatively, Mid–South contends that if the defendants are entitled to damages regarding the forklift, that the trial court erred in calculating such damages based on rental value rather than the replacement value of $8,000 to $10,000. The amount of damages awarded by the trial court is a question of fact to which we attach a presumption of correctness, whereas the question of whether the trial court has utilized the proper measure of damages is a question of law which we review *de novo*. *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn.Ct.App.1998) (citations omitted).

At trial, Mr. Davidson testified that he loaned his forklift to Clayton Cramb, apparently free of charge,[11] for "[a] month or two" and that he intended to "pick it up" when he had "a truck coming back through" and Mr. Cramb "g[o]t through with scrapping [his] stuff." According to Mr. Davidson, he later sent an "urgent" letter to Mr. Cramb's attorney notifying him of his need to pick up the forklift.

---

**10.** We note that this finding in no way affects the trial court's judgments in favor of Martin Machine, of which Mr. Davidson is vice president.

**11.** In a letter to Mr. Cramb's attorney, Mr. Davidson stated that he "d[id]n't want to charge Mr. Cramb for the use of our lift[.]"

However, he was allegedly told that he could only recover the forklift if he removed the other equipment stored at Mid–South. Mr. Davidson ultimately recovered his forklift after gaining access to Mid–South's facility by climbing through an air conditioner hole. He testified that he was without his forklift for forty months; however, neither party elicited testimony regarding the period of time that elapsed before Mr. Davidson first attempted to recover the forklift.[12] Because the forklift was initially loaned without charge, Martin Machine should not recover for the lost use of its forklift prior to the time when Mr. Davidson attempted to secure its return. We find that the record does not support the trial court's award of $32,000, which was based on $800 rent per month for forty months. Thus, we remand to the trial court for a determination of the appropriate period of recovery.

Notwithstanding our remand to the trial court, we address Mid–South's argument that the trial court utilized an inappropriate measure of damages. On appeal, Mid–South argues that the trial court should have awarded Martin Machine the forklift's $8,000 to $10,000 replacement value rather than $32,000 for the forklift's rental. Mid–South cites *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn.Ct.App.1998), wherein the middle section of this Court acknowledged that "[t]he measure of damages for a long-term deprivation of personal property cannot necessarily be reliably calculated by extrapolating the damages for a short-term deprivation over a longer term." (citing *Perkins v. Brown*, 132 Tenn. 294, 299, 177 S.W. 1158, 1160 (1915)). We concede that multiplying one month's rental value times forty months may not accurately

reflect the cost of a long-term, forty-month lease. However, Mid–South has offered no proof regarding the cost of a long-term lease, instead arguing only that the proper measure of damages is the forklift's replacement value. "Damages for the wrongful detention of property may be measured either by the fair market rental value of the property for the period of detention, *see Stanley v. Donoho*, 84 Tenn. 492, 494 (1886), or by the net profit lost during the detention period." *Beaty*, 15 S.W.3d at 827 (citing *Am. Bldgs. Co. v. DBH Attachments, Inc.*, 676 S.W.2d 558, 562–63 (Tenn.Ct.App.1984); *Summers & Lewis v. Sanderson*, 7 Tenn. App. 624, 627–28 (1928)). Accordingly, we affirm the trial court's use of the forklift's rental value.

### I. Three Pieces of Equipment

Finally, Mr. Davidson argues that the trial court "erred in awarding damages to the Appellee, and consequently adjusting [its] final judgment on [its] recovery, with regards to three pieces of used metal-working equipment. Specifically, the Appellant assigns error in that the trial court not only awarded to the Appellee[ ]s $11,664.37 for storage of this equipment, in clear contravention of the parties' agreement, but in the trial court reductions of the Appellant's unrecovered costs under this contract by $23,476.00." Mr. Davidson claims that the $23,476.00 reduction "was done by the trial court without any factual support."

The circumstances surrounding these three pieces of equipment are unclear from the record. On appeal, Mr. Davidson argues that the trial court erred in finding that the defendants returned the three pieces of equipment *after* the July 1999

---

12. An August 2000 letter from Mr. Davidson requesting the forklift's return is included in the record before us. However, we do not know when the forklift was first loaned to Mid–South.

auction, contending that the equipment was returned *prior to* the auction. In its brief, Mid–South argues that the time of the equipment's return is immaterial, as the trial court's award to Mid–South for storage costs did not include a storage fee for the three pieces of equipment.

In its order, the trial court awarded Mid–South $63,000 for "equipment storage[,]" noting that "Mr. David C. Wood has recalculated the unrecovered costs incurred by Martin Machine & Tool, Inc. and Spydell Davidson by removing costs associated with three pieces of equipment . . . returned to Mid–South Industries, Inc. after the 1999[a]uction." Orally, the trial judge noted that the proof showed that "it took between 7,000 and 10,000 square feet to store all of the . . . equipment." However, because those numbers included the three pieces of equipment which had been returned to Mid–South, the trial court reduced Mid–South's storage award to $63,-000 [13]—to reflect 3750 square feet being used to store Mr. Davidson's separate property. Thus, we find that the trial court's award to Mid–South for storage did not include storage of the three pieces of equipment, and we find this issue without merit.

We also reject Mr. Davidson's argument that the trial court reduced his unrecovered costs "without any factual support." The trial court's order initially awarded Martin Machine and Mr. Davidson $103,564.02 in unrecovered costs, but that amount was reduced to $80,088.02—a difference of $23,476. At trial, the defendants' expert, David C. Wood, testified that the defendants' damages would be offset by "mitigation amounts" of $23,476, and an exhibit prepared by him listed "mitigation consideration" of $23,476.

Thus, we find that the trial court's reduction was supported by the evidence.

## V. CONCLUSION

For the aforementioned reasons, we affirm the trial court's award of $63,000 to Mid–South for storage costs, specifically finding that such award does not include storage of three pieces of equipment at issue. We further affirm the trial court's dismissal of the Crambs, its finding that there was no breach of contract, and its offset of the defendants' recovery by $23,476. Regarding the trial court's award of $80,088.02 to the defendants, we find that Martin Machine's claim for lost profits is barred by the statute of limitations, but that its claims for magazine advertising, direct labor related to equipment, and auction costs are not. Thus, we remand to the trial court for a determination of the basis of the $80,088.02 award. We find that the trial court applied the appropriate measure of damages in valuing the improperly detained forklift, but we remand to the trial court to determine the appropriate number of months on which the award should be based. We reverse all awards to Mr. Spydell Davidson. Finally, we find that the trial court impliedly denied the defendants' request for dismissal, and that the defendants waived the issue of fraud. Costs of this appeal are taxed one-half to Appellants, Martin Machine and Tool, Inc. and Spydell Davidson, and one half to Appellee, Mid–South Industries, Inc., for which execution may issue if necessary.

---

**13.** The calculation is as follows: 3750 square feet at $.20 per square foot per month, for 85 months.