IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 13, 2011 Session

## TONY MIZE ET AL. v. VICTOR MARK CONSULO ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 081957      Claudia Bonnyman, Chancellor**

**No. M2011-00455-COA-R3-CV - Filed December 8, 2011**

Purchasers of house sued sellers for breach of contract because, contrary to the sale agreement, the house was not connected to the sewer. After a trial, the court entered judgment in favor of the purchasers for the cost of connecting the house to the sewer. In this appeal, the sellers argue that the trial court erred in applying the wrong statute of limitations, in finding in favor of the purchasers, in using the wrong measure of damages, and in the award of attorney fees. We find no error in the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

George R. Fusner, Brentwood, Tennessee, for the appellants, Victor Mark Consulo and wife, April M. Consulo.

Wende J. Rutherford and Robert F. Spann, Nashville, Tennessee, for the appellees, Tony Mize and wife, Sharla Mize.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts in this case are not in dispute. Tony and Sharla Mize ("Buyers") bought a house from Victor and April Consulo ("Sellers") in June 2005. The purchase and sale agreement includes this statement: "The plumbing system is connected to the public sewer." Included with the contract is a Tennessee Residential Property Condition Disclosure form indicating that the property was connected to the city sewer.

Buyers filed this suit against Sellers and Sellers' realtor on September 4, 2008, alleging causes of action for fraudulent misrepresentation and violation of the Tennessee Consumer Protection Act based upon the fact that the house was not connected to the city sewer. They sought compensatory and punitive damages and attorney fees. The court subsequently granted Buyers permission to file an amended complaint in which they alleged only breach of contract, and Buyers were later permitted to add a cause of action for negligent misrepresentation. The realtor reached an agreement with Buyers through mediation, and Buyers dismissed their claims against the realtor.

At a bench trial in January 2011, Mr. Mize testified that when Buyers purchased the house, they had a home inspection; the inspection did not address the sewer connection.[1] Buyers began to have problems with the basement toilet in July 2008, and when a plumber came to repair the problems, Buyers learned that their house was on a septic system. Mr. Mize testified as to the costs he and his wife had incurred in connecting the house to the city sewer. He stated that he and his wife would not have bought the house if they had known that it was on a septic system. Asked about repairing the septic system instead of connecting to the sewer, Mr. Mize testified:

> That was not an option. If you have a sewer, if your septic fails, my understanding is, and this is how Hiller [the plumber] represented to us and what other plumbers confirmed with us, that if you're on a septic system and it fails, and the city line is there, you have to connect.

Sellers put on testimony from a previous owner, who sold the property to Sellers; the previous owner stated that she had understood and had told Sellers at the time of the sale that the property was connected to the sewer. Sellers also called a residential property appraiser as an expert witness. He testified that, according to his research, it was his professional opinion that, during the relevant time period, there was no difference in value "between the properties in town that are on septic systems versus those on sewer." Ms. Consulo, who was also a realtor, testified that she and her husband always thought the property was on the city sewer and that, in her experience, being connected to a sewer system did not add value to a piece of property. She admitted that she had a "handful" of clients over the years who turned down property because it was on a septic system.

The trial court concluded that Buyers did not carry their burden of proof as to the negligent misrepresentation claim but that they did prove that Sellers breached their contract. The court made factual findings and entered judgment in favor of Buyers in the amount of

---

[1]The proof showed that, when they lived in the house, Sellers (unwittingly) covered the site of the septic tank with a concrete patio.

$12,144.46, the costs incurred in connecting the property to the city sewer. The court also held that Buyers were entitled to reasonable attorney fees. Sellers filed a motion to alter or amend, asking the court to give them credit for the settlement paid to the realtor ($2,000). The court denied the motion to alter or amend, stating that the case was decided on contract principles. In a final order entered on April 14, 2001, the court awarded Buyers judgment in the amount of $21,144.46 (the damages plus $9,000 in attorney fees).

The arguments raised by Sellers on appeal can be summarized as follows: They assert that the trial court applied the wrong statute of limitations, failed to properly analyze the "as is" provision of the contract, used an improper measure of damages, and erred in awarding $9,000 in attorney fees.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999); *Story v. Lanier*, 166 S.W.3d 167, 183 (Tenn. Ct. App. 2004). The interpretation of a statute and the application of that statute to undisputed facts involve issues of law. *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.,* 277 S.W.3d 381, 386 (Tenn. 2009).

The award of attorney fees is within the trial court's discretion and will not be overturned absent an abuse of discretion. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). In reviewing the award, we look at the evidence in the light most favorable to the trial court's decision. *Id.* Thus, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill,* 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

ANALYSIS

I.

The first issue for our determination is the applicable statute of limitations. Sellers argue that the trial court erred in failing to dismiss the complaint as barred by the three-year statute of limitations for damages to real property set out at Tenn. Code Ann. § 28-3-105.[2]

---

[2]Tenn. Code Ann. § 28-3-105 provides for a three-year statute of limitations for "[a]ctions for injuries to personal or real property."

Buyers assert that the trial court properly treated the case as an action for breach of contract, not an action for damages to real property.[3]

The gravamen of an action, not whether it is brought in the form of an action in tort or an action for breach of contract, will determine the appropriate statute of limitations. *Pera v. Kroger Co.*, 674 S.W.2d 715, 719 (Tenn. 1984); *Mid-South Indus., Inc. v. Martin Mach. & Tool, Inc.*, 342 S.W.3d 19, 29 (Tenn. Ct. App. 2010). To determine the gravamen, "or real purpose of an action, the court must look to the basis for which damages are sought." *Mid-South Indus.*, 342 S.W.3d at 29 (quoting *Keller v. Colgems-EMI Music, Inc.*, 924 S.W.2d 357, 359 (Tenn. Ct. App. 1996)); *see also Mike v. Po Group, Inc.*, 937 S.W.2d 790, 793 (Tenn. 1996). This court has previously cited the following relevant principles:

> The gravamen of an action is in contract and not in tort "[w]hen an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby." 54 C.J.S. *Limitations of Actions* § 50 (1987).

*Green v. Moore*, No. M2000-03035-COA-R3-CV, 2001 WL 1660828, at *3 (Tenn. Ct. App. Dec. 28, 2001).

In the present case, Buyers sought damages for Sellers' failure to provide a piece of property connected to the city sewer as stated in the contract.[4] This is not a claim for damages resulting from negligent performance but for failure to perform in accordance with the contract terms. Damages are not sought for damage to property resulting from breach of a common law duty; rather, damages are sought for failure to provide the property in the condition described in the contract.

The cases upon which Sellers rely—*Pinkerton & Laws Co. v. Nashville Flying Svc., Inc.*, 402 S.W.2d 861 (Tenn. 1966), and *Rubbermaid-Maryville, Inc. v. Barber & McMurry, Inc.*, No. 03A01-9309-CV-00327, 1994 WL 45315 (Tenn. Ct. App. Feb. 15, 1994)—are factually distinguishable from the present case. In both cases, although the parties had a contractual relationship, the court determined that the gravamen of the action sounded in tort, rather than in contract. In *Pinkerton*, the court concluded that the basis of the claim was "the

---

[3]Tenn. Code Ann. § 28-3-109 provides for a six-year statute of limitations for "[a]ctions on contracts not otherwise expressly provided for."

[4]Buyers' claim for negligent misrepresentation was dismissed by the trial court and is not at issue on appeal.

physical injury or damage caused to the airplane by the failure of the agents of defendant to put oil in the nose-wheel shimmy dampener." *Pinkerton & Laws Co.*, 402 S.W.2d at 255. In *Rubbermaid*, the court determined that the factual basis of the complaint was "damage to property, i.e., the defectively designed concrete floor." *Rubbermaid-Maryville*, 1994 WL 45315, at *2. Thus, although the complaint alleged a breach of contract, the gravamen of the complaint was damage to property, which sounds in tort. *Id.*

Because the gravamen of the action in this case is breach of contract, the trial court did not err in declining to dismiss the claim pursuant to the statute of limitations.

II.

Sellers argue that the trial court should have determined that the risk of loss shifted to Buyers based upon the "as is" provisions of the contract. We cannot agree with Sellers' argument.

Sellers' argument hinges upon the interpretation of the contract between the parties. In interpreting a contract, we seek to ascertain the intent of the parties from the language of the contract; in so doing, we must apply to those words their usual, natural, and ordinary meaning. *Staubach Retail Servs.-SE, LLC v. H.G. Hill Realty Co.,*160 S.W.3d 521, 526 (Tenn. 2005). We derive the intent of the parties from the four corners of the contract and give effect to all parts. *Gale Smith & Co., Inc. v. Governors Club, L.L.C.*, No. M2001-01616-COA-R3-CV, 2002 WL 31094849, at *4 (Tenn. Ct. App. Sept. 20, 2002); *see also Davidson v. Davidson*, 916 S.W.2d 918, 922 (Tenn. Ct. App. 1995).

The provisions of the purchase and sale contract upon which Sellers rely are the following:

Buyer shall, within 5 days after Binding Agreement Date, make such inspections described herein AND, by written notice to Seller, either:

(1) accept the Property in its present "AS IS" condition with any and all faults and no warranties expressed or implied. Seller has no obligation to make repairs;

OR (2) furnish Seller a copy of the inspection report and a written list of items set forth in the inspection report which Buyer requires to be repaired and/or replaced in a professional and workmanlike manner.

5

OR (3) furnish Seller with a list of written specified objections and immediately terminate this Agreement with all Earnest Money refunded to Buyer. Seller, upon request, shall be entitled to a copy of all inspection reports.

Mr. Mize testified that Buyers obtained an inspection and received a $250 credit at closing for various repairs.

These facts do not indicate that the parties entered into an "as is" contract. The "as is" provision is an optional one, and there is nothing in the record to suggest that this option was chosen by Buyers. Moreover, we agree with the trial court's analysis that, even if the contract contains an "as is" provision, that provision does not nullify other contract provisions:

> [I]t is not clear to this Court, even in a preponderance of the evidence situation, that this was an "as is" contract. However, the Court is going to assume for purposes of its findings that it was an "as is" contract modified by the information, the statement of fact that the property was on the public sewer system, and this modification, the addition of this language to the contract is what makes this case different in a very material and significant way from some of the cases or the cases cited by defendants' counsel upon which the defendants have relied.

Thus the statement in the contract that the property was connected to the city sewer would modify any "as is" component to the contract. *See Olmsted v. Mulder*, 863 P.2d 1355, 1359 (Wash. Ct. App. 1993).

Sellers further argue that the trial court erred in failing to apply Tenn. Code Ann. § 66-5-204,[5] part of the Residential Property Condition Disclosure provisions, and in holding that an innocent error by Sellers constituted a breach of contract. The Residential Property Condition Disclosure form used by the parties expressly provides that "any sales agreement executed between the parties will supersede this form as to the terms of sale . . . ." As discussed above, this action sounds in breach of contract; the disclosure provisions are not determinative of the parties' contractual obligations.

---

[5]Tenn. Code Ann. § 66-5-204(a) provides that an owner shall not be liable for an erroneous statement on the disclosure form if the error was not within the owner's actual knowledge "or was based upon information provided by public agencies or by other persons providing information . . . that is required to be disclosed pursuant to this part, or the owner reasonably believed the information to be correct."

The next issue relates to the proper measure of damages. The trial court awarded Buyers the amount they spent to connect the property to the city sewer. Sellers put on proof that there was no difference in value between a house on sewer and a house on septic and that the proper measure of damages was the difference in value, or zero.

The proper measure of damages is a question of law, whereas the amount of damages awarded is a factual determination. *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 541 (Tenn. Ct. App. 2005). In a breach of contract action, the purpose of assessing damages is "to place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed." *Id.* (quoting *Wilhite v Brownsville Concrete Co., Inc.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990)). Damages are intended to protect the non-breaching party's "expectation interest." *BVT Lebanon Shopping Ctr., Ltd. v. Wal-Mart Stores, Inc.*, 48 S.W.3d 132, 136 (Tenn. 2001).

Section 347 of the Restatement (Second) of Contracts, which has been cited with approval by our Supreme Court, defines the general measure of damages for breach of contract as follows:

> Subject to the limitations stated in §§ 350-53 [not applicable here], the injured party has the right to damages based on his expectation interest as measured by
>
> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
>
> (b) any other loss, including incidental or consequential loss, caused by the breach, less
>
> (c) any cost or other loss that he has avoided by not having to perform.

RESTATEMENT (SECOND) OF CONTRACTS § 347 (1979); *see BVT Lebanon*, 179 S.W.3d at 136. With respect to determining the loss in value, the comments to the Restatement provide the following relevant guidance:

> If defective or partial performance is rendered, the loss in value caused by the breach is equal to the difference between the value that the performance would have had if there had been no breach and the value of such performance as was actually rendered. *In principle, this requires a determination of the values of*

*those performances to the injured party himself and not their values to some hypothetical reasonable person or on some market.*

RESTATEMENT (SECOND) OF CONTRACTS § 347 cmt. b (emphasis added).

Most of the Tennessee cases (as well as cases from other jurisdictions) that are factually similar to the present case involve construction contracts. *See* Richard S. Wirtz, *Cost of Performance or Difference in Value?,* 59 CASE W. RES. L. REV. 61 (2008). In the context of a breach of a construction contract, our courts have discussed two ways of measuring damages–cost of repair and diminution in value. *Wilkes v. Shaw Enter., LLC*, No. M2006-01014-COA-R3-CV, 2008 WL 695882, at *10 (Tenn. Ct. App. Mar. 14, 2008). The relationship between these two measures has been summarized as follows:

As a general rule, the measure of damages is the cost of correcting the defects or completing the omissions, rather than the difference in value between what ought to have been done in the performance of the contract and what has been done, where the correction or completion would not involve unreasonable destruction of the work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained. On the other hand, the courts generally adhere to the view that if a builder or contractor has not fully performed the terms of the construction agreement, but to repair the defects or omissions would require a substantial tearing down and rebuilding of the structure, the measure of damages is the difference in value between the work if it had been performed in accordance with the contract and that which was actually done, or (as it sometimes said) the difference between the value of the defective structure and that of the structure if properly completed.

*Id.* at *10 (quoting *Edenfield v. Woodlawn Manor, Inc.*, 462 S.W.2d 237, 241 (Tenn. Ct. App. 1970)); *see generally* RESTATEMENT (SECOND) OF CONTRACTS § 348. In *GSB Contractors,* this court put it succinctly: "*Generally*, the measure of damages will be the cost [of] repair *unless* the repairs are not feasible or the cost is disproportionate to the [diminution] in value." *GSB Contractors*, 179 S.W.3d at 543 (quoting *Radant v. Earwood*, No. 02A01-9802-CV-00029, 1999 WL 418339, at *8 (Tenn. Ct. App. June 22, 1999) (emphasis added)). Furthermore, "the burden is on the defendant to show that the cost of repairs is unreasonable when compared to the diminution in value due to the defects and omissions.'" *Id.* (quoting *Nutzell v. Godwin*, No. 33, 1989 WL 76306, at *2 (Tenn. Ct. App. July 13, 1989)).

Buyers point to one Tennessee case involving breach of a real estate sale contract (as opposed to a construction contract). In *Radley v. Brooks*, No. 02A01-9512-CH-00269, 1996

WL 740800, at *2 (Tenn. Ct. App. Dec. 30, 1996), the buyers alleged that the seller breached the land sales agreement because the home's wood stove was not in good working order at closing. The trial court found a breach of contract and awarded the plaintiffs the cost of buying and installing a new fireplace. *Id.* at *3-4. In affirming the trial court's award, the appellate court did not discuss alternative measures of damages.

We find the measure of damages principles used in the construction contract context applicable to the breach of the real estate sale contract in the present case. These principles have been applied in other jurisdictions outside the construction context. *See* 22 AM. JUR. 2D *Damages* §§ 66-67 (2003).

Thus, we find that the proper measure of damages in this case is the cost of repair, unless the cost of repair is shown by the defendant to be unreasonable or grossly disproportionate when compared to the diminution in value. *GSB Contractors*, 179 S.W.3d at 543. Moreover, the damages are intended to compensate Buyers for the loss in value to them, not the loss in value to some hypothetical reasonable buyers, caused by the Sellers' breach. RESTATEMENT (SECOND) OF CONTRACTS § 347 cmt. b. Although Sellers put on proof that the market value of properties generally did not vary depending on whether they were connected to sewer or septic, Mr. Mize testified that he and his wife would not have bought the property if they had known it was not connected to the sewer. Mr. Mize also testified that he was told by plumbers who came to evaluate the problem that their only available option was to connect to the sewer. The trial court implicitly found that the cost of repair, $12,000, was not unreasonable or disproportionate when compared with the diminution in the value of the property to Buyers. We find no error in the trial court's use of the cost of repair as the measure of damages in this case.

IV.

There is no dispute that the contract authorizes the award of attorney fees; the only issue is whether the amount awarded, $9,000, is reasonable.

In its January 27, 2011 order, the trial court found that Buyers were entitled to attorney fees. Buyers' attorney filed a motion and affidavit and time sheet reflecting a total of 49 hours of work on the case and an hourly rate of $250. In his affidavit, Buyers' attorney estimated that 75% of the chargeable hours were attributable to his work on the case against Sellers (while 25% was attributable to the case against the Sellers' real estate agent). Buyers' attorney also averred that he had advanced expenses in the total amount of $113.20. Sellers filed an objection to Buyers' motion for attorney fees, asserting that attributing 75% of the billable hours to the case against Sellers was arbitrary, that Buyers received a settlement of $2,000 from the real estate agent, that the charges were excessive for the legal work

9

performed, and that some of the charges were for clerical work. Attached to the Sellers' response was a table setting out the disputed charges and their argument as to the propriety of each charge.

The trial court held a hearing on the attorney fees on February 25, 2011, and entered judgment in the amount of $9,000 for Buyers' attorney fees. The court found this amount to be consistent with the following factors set out in Rule 1.5 of the Rules of Professional Conduct:

- The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;

- The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

- The fee customarily charged in the locality for similar legal services;

- The experience, reputation and ability of the lawyer or lawyers performing the services.

Tenn. S. Ct. R. 8, Rule 1.5(a)(1), (2), (3), (7). The court went on to make the following findings:

The Court finds that the fee is reasonable and not excessive in that the subject case required substantial research, discovery and clerical work which precluded plaintiff's attorney from investing more of his time representing other clients.

The Court further finds that the hourly rate charged by plaintiff's attorney is reasonable considering the issues involved with the subject case and also considering the expertise and experience of plaintiff's attorney, Robert F. Spann, who has been a practicing attorney for 42 years, most of which has been in the field of real estate litigation.

As stated above, an award of attorney fees is reviewed under the abuse of discretion standard. *Wright*, 337 S.W.3d at 176. In determining the reasonableness of attorney fees, the courts are guided by the factors set forth in Rule 1.5 of the Rules of Professional Conduct. *Id.* The determination of whether a fee is reasonable is "a subjective judgment based on evidence and the experience of the trier of facts, and the reasonableness of the fee

10

must depend upon the particular circumstances of the individual case."  *Id.* at 180-81 (quoting *White v. McBride*, 937 S.W.2d 796, 800 (Tenn. 1996)).

In this case, the trial court considered the factors set out in Rule 1.5, and we cannot say that the amount of attorney fees awarded is unreasonable.  *See Sprintz-Hall Real Estate Partners, LLC, v. Ashleigh Martin*, No. M2008-02093-COA-R3-CV, 2009 WL 3126253, at *17 (Tenn. Ct. App. Sept. 29, 2009).  Seventy-five percent of the total fee generated for 49 hours at $250 an hour would be approximately $9,187, without expenses.

## CONCLUSION

The judgment of the trial court is affirmed.   Costs of appeal are assessed against Sellers, for which execution may issue if necessary.


_____
ANDY D. BENNETT, JUDGE