IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 23, 2015

## JOSEPHINE WHITTHORNE YOUNG v. WILLIAM F. YOUNG, JR.

**Appeal from the Circuit Court for Shelby County**
**No. 1641518RD     Robert Samual Weiss, Judge**

_____

**No. W2014-02006-COA-R3-CV - Filed February 26, 2015**

_____

This post-divorce dispute concerns a divorce decree that required husband to pay one-half of his retirement benefits to wife as alimony *in solido*. Fourteen years after the divorce, Husband returned to the trial court to terminate the payments on the ground that by the terms of the divorce decree, husband had been substantially overpaying wife. The trial court denied husband's petition on the alternative grounds of *res judicata*, and a finding that the divorce decree obligated husband to pay wife one-half of the entire value of the retirement plan. We reverse the trial court's determination that *res judicata* bars husband's petition, but affirm as to the trial court's interpretation of the divorce decree. Reversed in part, affirmed in part, and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part; Affirmed in Part; and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, J., and BRANDON O. GIBSON, J., joined.

Matthew R. Macaw, Shalini Bhatia, and George Michael Casey, Jr., Memphis, Tennessee, for the appellant, William F. Young Jr.

Mitzi C. Johnson, Collierville, Tennessee, for the appellee, Josephine Whitthorne Young.

**OPINION**

**Background**

The parties, Josephine Whitthorne Young ("Wife") and William F. Young, Jr. ("Husband"), were divorced in 2000 after an approximately thirty-three year marriage. Wife filed a complaint for divorce in Division 8 of the Shelby County Circuit Court on October 25, 1999. When Husband failed to timely respond to the complaint, the trial court, Judge D'Army Bailey, entered a default judgment against Husband on January 21, 2000. Although Husband moved to set aside the default judgment, the trial court denied Husband's request and entered a Final Decree of Divorce, entered *nunc pro tunc* to May 3, 2000. Husband's and Wife's assets were generally equally divided in the Final Decree of Divorce, and Wife was awarded multiple forms of alimony, including alimony *in futuro* of $500.00 per month, and alimony *in solido* to pay some of Wife's expenses. In addition, the Final Decree of Divorce included the following provisions:

> 10.     As a division of marital property, the parties shall equally divide [Husband's] DROP plan with the City of Memphis . . . , as of the date of the entry of this Final Decree of Divorce, and which plan had a balance as of December 31, 1999, of $68,657.77 [hereinafter "City of Memphis DROP plan"].
>
> 11.     As alimony in solido, the parties shall equally divide [Husband's] retirement/pension plan with the City of Memphis . . . , as of the date of the entry of this Final Decree of Divorce, and to which plan [Husband] has contributed $60,114.96 through March 24, 2000 [hereinafter "City of Memphis retirement/pension plan"].
>
> 12.     As alimony in solido, the parties shall equally divide [Husband's] deferred compensation plan with the City of Memphis . . . . entity number 0029, as of the date of the entry of this Final Decree of Divorce, which plan is managed through Nationwide Retirement Solutions, Inc., and which had a balance as of April 19, 2000 of $47,944.95. [Husband] is presently eligible to access his deferred compensation plan, and as such shall, within seven (7) days from the entry of this Final Decree of Divorce, withdraw one-half (½) of the funds in said account as of the date of the Final Decree of Divorce and shall immediately pay same to [Wife]. The parties shall be equally financially responsible for one-half (½) of the penalties charged against his withdrawal [hereinafter "City of Memphis deferred compensation plan"].

Husband subsequently filed a motion to set aside the Final Decree of Divorce. The trial court denied Husband's motion by order entered October 11, 2000. No appeal was taken of the

Final Decree of Divorce or the motion to set aside.

On November 17, 2000, Wife filed a criminal and civil contempt petition against Husband related to his failure to comply with provisions of the Final Decree of Divorce, specifically with regard to the liquidation of a joint savings account, the payment of Wife's attorney's fees, and the withdrawal of Wife's portion of Husband's City of Memphis deferred compensation plan. The parties entered into a consent order on April 6, 2001, resolving the contempt petition. In addition, the agreed order stated:

> [Husband] is scheduled to retire from the City of Memphis on April 14, 2001, at which time he shall be eligible to draw money from his DROP Plan, his pension/retirement plan and his deferred compensation plan. [Husband] shall execute all necessary paperwork on or before April 14, 2001, to effectuate the transfer of that portion of the financial accounts to which [Wife] is entitled pursuant to paragraphs 10, 11, and 12 of the Final Decree of Divorce. . . .

Husband retired from his employment as anticipated in April 2001. On July 5, 2001, Husband filed a motion to modify the Final Decree of Divorce to "terminate and/or reduce" his obligation to pay both alimony *in futuro* and alimony *in solido* in the form of car payments for the parties' daughter due to Husband's decreased income. Husband later withdrew his Petition to modify the alimony *in solido* award. Husband's Petition to terminate his alimony *in futuro* obligation was eventually referred to a divorce referee. On February 2, 2002, the trial court entered an order confirming the recommendation of the divorce referee to terminate Husband's alimony *in futuro* obligation due to Husband's retirement, over Wife's objection. Wife did not appeal the termination of Husband's alimony *in futuro* obligation to this Court.

The parties lived in apparent harmony for over a decade. Husband forwarded one-half of his City of Memphis retirement/pension plan payments, or $1,617.24, to Wife every month since the payments began in May 2001. As of the summer of 2014, Husband had paid Wife over $260,000.00 from the City of Memphis retirement/pension plan. On June 25, 2014, however, Husband filed a Petition in the original divorce proceeding captioned "Petition for Declaratory Judgment; To Terminate Alimony in Solido Payments and to Require Wife to Reimburse Husband."[1]  In his Petition, Husband asked the trial court to interpret the Final

---

[1] Husband indicates in his brief that, on advice of counsel, he had first unilaterally terminated his alimony payments to Wife in April 2014. When Wife threatened to file a contempt action against Husband

(Continued...)

Decree of Divorce provision related to Husband's alimony *in solido* obligation with regard to his pension from the City of Memphis. Specifically, Husband argued that Wife was only entitled to one-half of the $60,114.96 that had been contributed to the City of Memphis retirement/pension plan by Husband prior to the divorce. Because Husband has paid Wife half of his benefits for over a decade, Husband contended that he was entitled to a reimbursement of over $220,000.00.

Wife filed a response on August 11, 2014, arguing that Husband was barred from seeking relief by the doctrine of *res judicata*. On the same day, Wife filed a motion to dismiss Husband's Petition on the ground of *res judicata*. Specifically, Wife argued that the issue of Husband's obligation to pay Wife one-half of all benefits received from the City of Memphis retirement/pension plan at issue had been litigated not just once, but twice—in the underlying divorce action and in the parties' consent order entered on Wife's petition for contempt. Because these issues had been previously litigated or could have been litigated previously, Wife argued that Husband was not entitled to relief on his Petition. Husband filed a response to Wife's motion, arguing that his Petition should not be dismissed.

In the intervening years, Judge Bailey retired and was eventually replaced by Judge Robert S. Weiss. Judge Weiss heard Husband's Petition and Wife's Motion to Dismiss on August 22, 2014.[2] On September 5, 2014, the trial court entered an order denying Husband's Petition and granting Wife's Motion to Dismiss. Specifically, the trial court's order states:

> 1. The Petition for Declaratory Judgment; To Terminate Alimony in Solido Payments and to Require Wife to Reimburse Husband is denied.
> 2. The original Final Decree of Divorce was entered on June 16, 2000; Petitioner's Rule 60 Motion was filed and disposed of by the Court; and the time to alter or amend the Final Decree has passed over thirteen (13) years ago.
> 3. The matter is barred by *res judicata* in that the Final Decree of Divorce is a final order.
> 4. [Husband] has been consistently paying for the past thirteen (13) years as he understood it to mean that the

----

(...continued)

shortly thereafter, he resumed paying Wife one-half of the City of Memphis retirement/pension plan proceeds and filed the instant Petition for a judicial determination of his continued obligation to pay this alimony.

[2] In August 2014, Judge Bailey was again elected to a Shelby County Circuit Court judgeship, this time in Division 3.

pension was to be divided. The approximate $60,000[.00] amount included in the Final Decree of Divorce could not legitimately be argued as the value of the pension at that time, especially in light of the fact that over $400,000.00 has been paid out since [Husband's] retirement. At the time of [Husband's] retirement, he could have elected to receive a lump sum or periodic payments, and he chose periodic payments. Thus, [Wife] is entitled to her one-half of the periodic payments.

5. In this Court's experience, there was no specific amount included as to the value of the pension as the City of Memphis either lacked the ability or lacked the desire to provide said value; and all the City of Memphis provides is the amount of the contributions made by the employee.

The trial court further ruled that each party was required to pay his or her own attorney's fees. Although Wife raised arguments regarding waiver, laches, and estoppel in the trial court, the trial court declined to rule in favor of Wife on these arguments.[3] Husband filed a timely notice of appeal.

**Issues Presented**

In his brief, Husband raises three issues:

1. Whether the trial court erred in holding that *res judicata* bars Husband's suit for a declaratory judgment declaring that he has satisfied his obligation to equally divide the proceeds from his City of Memphis retirement/pension plan with Wife through the mechanism of alimony *in solido*.
2. Whether the trial court erred in holding that the alimony *in solido* provision of the Final Decree of Divorce requires Husband to continue paying Wife fifty percent (50%) of his monthly pension.
3. Whether the trial court erred in denying Husband's claim for reimbursement of proceeds mistakenly overpaid to

---

[3] Wife does not raise the trial court's refusal to credit her waiver, laches, or estoppel arguments as an issue on appeal. Accordingly, we decline to consider these arguments. *See* Tenn. R. App. 13(b) ("Review generally will extend only to those issues presented for review.").

Wife.

In the posture of appellee, Wife raises two additional issues:

1.  Whether the trial court erred in not granting Wife's request for attorney's fees at trial.
2.  Whether Wife is entitled to attorney's fees on appeal.

**Discussion**

As an initial matter, we must first consider the ruling made by the trial court. From our review of the trial court's order, the trial court first determines that Wife's motion to dismiss is well-taken because Husband's Petition is barred by the doctrine of *res judicata*. If correct, a ruling that the Petition is barred by *res judicata* eliminates the need to consider the substantive merits of the Petition, and instead, subjects the Petition to dismissal. *See Levitt v. City of Oak Ridge*, No. E2013-02625-COA-R3-CV, 2014 WL 4458913, at *4, n.1 (Tenn. Ct. App. Sept. 10, 2014) (affirming the trial court's dismissal of the plaintiff's complaint based on the doctrine of *res judicata* and indicating that the other issues raised in the appeal were rendered moot by affirmance on the ground of *res judicata*). Despite this ruling, the trial court went on to consider the substance of Husband's Petition. In his appellate brief, Husband treats the trial court's two rulings as independent, alternative bases for denying Husband relief. Accordingly, we likewise consider the trial court's findings as alternative rulings, either of which could serve as a basis for denying Husband relief.

*Res Judicata*

We begin first with Husband's contention that the trial court erred in dismissing his Petition on the basis of *res judicata*. In considering an appeal from a trial court's grant of a motion to dismiss, we take all allegations of fact in the complaint as true and review the trial courts' legal conclusions *de novo* with no presumption of correctness. Tenn R. App. P. 13(d); *Mid-South Industries, Inc. v. Martin Mach. & Tool, Inc.*, 342 S.W.3d 19, 26–27 (Tenn. Ct. App. 2010) (citing *Owens v. Truckstops of America*, 915 S.W.2d 420, 424 (Tenn. 1996)).

In *Lien v. Couch*, 993 S.W.2d 53 (Tenn. Ct. App. 1998), this Court discussed various aspects of the doctrine of *res judicata*. We stated:

> Res judicata is a claim preclusion doctrine that promotes finality in litigation. *See Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976); *Jordan v. Johns*, 168 Tenn. 525, 536–37, 79 S.W.2d 798, 802 (1935). It bars a second suit

between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit. *See **Richardson v. Tennessee Bd. of Dentistry***, 913 S.W.2d 446, 459 (Tenn. 1995); Collins v. Greene County Bank, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995).

Parties asserting a res judicata defense must demonstrate that (1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was final and on the merits, (3) the same parties or their privies were involved in both proceedings, and (4) both proceedings involved the same cause of action. *See **Lee v. Hall***, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). A prior judgment or decree does not prohibit the later consideration of rights that had not accrued at the time of the earlier proceeding or the reexamination of the same question between the same parties when the facts have changed or new facts have occurred that have altered the parties' legal rights and relations. *See **White v. White***, 876 S.W.2d 837, 839–40 (Tenn. 1994).

The principle of claim preclusion prevents parties from splitting their cause of action and requires parties to raise in a single lawsuit all the grounds for recovery arising from a single transaction or series of transactions that can be brought together. *See **Bio-Technology Gen. Corp. v. Genentech, Inc.***, 80 F.3d 1553, 1563 (Fed. Cir. 1996); ***Hawkins v. Dawn***, 208 Tenn. 544, 548, 347 S.W.2d 480, 481–82 (1961); ***Vance v. Lancaster***, 4 Tenn. (3 Hayw.) 130, 132 (1816). The principle is subject to certain limitations, one of which is that it will not be applied if the initial forum did not have the power to award the full measure of relief sought in the later litigation. *See **Davidson v. Capuano***, 792 F.2d 275, 279 (2d Cir.1986); ***Carris v. John R. Thomas & Assocs., P.C.***, 896 P.2d 522, 529–30 (Okla. 1995); *see also **Rose v. Stalcup***, 731 S.W.2d 541, 542 (Tenn. Ct. App. 1987) (holding that a subsequent action was not barred because the initial court did not have jurisdiction over the claim). Thus, the Restatement of Judgments points out:

> The general rule [against relitigation of a claim] is largely predicated on the assumption that the jurisdiction in which the first judgment was

rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law. When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.

*Restatement (Second) of Judgments* § 26(1)(c) cmt. c (1982).

***Lien***, 993 S.W.2d at 55–56; *see also **Ostheimer v. Ostheimer***, No. W2002-02676-COA-R3-CV, 2004 WL 689881, at *5 (Tenn. Ct. App. Mar. 29, 2004) ("[C]laim preclusion bars any claims that 'were or could have been litigated' in a second suit between the same or related parties involving the same subject matter.").

Accordingly, in order for *res judicata* to bar Husband's Petition, the above four elements must be met. In this case, there appears to be no dispute that both the Final Decree of Divorce and the consent order entered by the parties were rendered by a court having jurisdiction, were decided on the merits and have become final, and involved the same parties as the present case. ***Lien***, 993 S.W.2d at 55–56 (citing ***Lee***, 790 S.W.2d at 294). As we perceive it, Husband argues that the prior judgments and this case do not involve the same subject matter. Specifically, Husband argues that the while the prior adjudications involved Wife's entitlement to alimony and Husband's entitlement to a reduction in other types of alimony he was obliged to pay under the Final Decree of Divorce, the issue in this case involves the question of an interpretation of the Final Decree of Divorce as it relates only to this provision of the Final Decree of Divorce, as well as a determination of whether Husband has satisfied his obligations under the Final Decree.

We agree that *res judicata* does not bar Husband's claim in this case. First, we note that Husband has never before filed a petition in the trial court regarding interpretation or termination of his obligation to pay alimony under this specific provision of the Final Decree of Divorce. Thus, this issue has never been decided by the trial court. This Court was faced with a similar argument in ***Chadwell v. Chadwell***, No. 03A01-9601-GS-00007, 1996 WL 555228 (Tenn. Ct. App. Oct. 1, 1996). In ***Chadwell***, well after a divorce decree was entered, a dispute arose between the parties regarding the proper interpretation of the term "stock" as used in the divorce decree. *Id.* at *1–*4. The dispositive issue concerned whether former

wife had rights in a stock ownership plan and investment account by virtue of the provision of the divorce decree awarding her fifty percent (50%) of "the stock accumulated by [former husband] at his place of employment." *Id.* at *1. Former husband argued that the issue of whether former wife had rights to this property was *res judicata*. *Id.* at *5. The Court of Appeals rejected former husband's argument, concluding: "It seems axiomatic that the issuance of a divorce decree will not be *res judicata* as to an issue that arises as to the interpretation of the decree itself." *Id.* Although former husband argued that the issue "could have and should have been litigated when the decree was issued," the Court concluded that there was no issue until the dispute arose. *Id.* Here, the record shows that Husband terminated his payments to Wife in April 2014. Thereafter, a dispute arose as to whether Husband was entitled to terminate the payments. Like in **Chadwell**, only after this dispute regarding the interpretation of the Final Decree of Divorce arose in 2014 was there an issue in dispute. Because the issue in dispute did not exist during any of the prior proceedings, it simply "could [not] have been litigated in the former suit."*Lien*, 993 S.W.2d at 55 (citing **Richardson**, 913 S.W.2d at 459).

We also discern no error in Husband's choice to raise this issue as a declaratory judgment action. "Declaratory judgments may be used to determine marital status and rights incident thereto[.]" 22A Am. Jur. 2d *Declaratory Judgments* § 170. This Court was previously faced with a declaratory judgment action asking the court to interpret a divorce decree involving the parties. *See **Clark v. Clark**, 620 S.W.2d 536 (Tenn. Ct. App. 1981). The Court expressed no rule that declaratory judgment actions were not a proper vehicle for seeking a judicial interpretation of a divorce decree, nor did the Court indicate that such an action would be barred by the doctrine of *res judicata*. *Id.* at 537–38. It is well-settled that the court has continuing jurisdiction to enforce its decrees. *See **State ex rel. Stall v. City of Knoxville**, 365 S.W.2d 433, 435 (Tenn. 1963) ("The power to enforce its final judgments is inherent in all courts, since without this power the courts themselves would be unable to effect the ends for which they were designed."). This maxim holds true in divorce cases wherein one party seeks a judicial interpretation of the divorce decree:

> While a trial court generally does not [have the] authority to alter or amend a divorce judgment, it does have the inherent and continuing authority to construe and clarify its judgment when that judgment is ambiguous. The interpretation of a divorce decree that is ambiguous or uncertain on its face and, because of its language, is of doubtful meaning or open to diverse constructions, may, therefore, be clarified by the tribunal that ordered it. Trial courts generally have wide discretion in interpreting divorce judgments.

27A C.J.S. *Divorce* § 456 (2014) (footnotes omitted).

Although neither party cites any cases in which *res judicata* has been cited as a bar to a subsequent action to interpret a divorce decree, our research has revealed one Tennessee Supreme Court case that implicitly rejects this argument, ***Johnson v. Johnson***, 37 S.W.3d 892 (Tenn. 2001), involving whether a non-modifiable property division was subject to further judicial action. In ***Johnson***, former husband unilaterally chose to receive a portion of his military retirement pay as disability benefits. *Id.* at 894. Former husband thereafter reduced his payments to former wife proportionally with the reduction in his retirement benefits. *Id.* Former wife filed a petition to modify the alimony provision of the divorce decree. *Id.* The Tennessee Supreme Court first concluded that the obligation at issue constituted property division, rather than alimony. The Tennessee Supreme Court noted that while the division of marital property is not subject to modification based on changed circumstances, former's wife petition actually involved enforcement of the original petition, rather than modification. *Id.* at 895–96. The Tennessee Supreme Court, therefore, proceeded to consider her argument, implicitly ruling that the courts had continuing authority to enforce the terms of a marital property provision in a divorce decree, even with regard to a provision that is non-modifiable.

The same is true in this case. Here, Husband does not seek a modification of his obligation to pay Wife, but merely a determination that he has fulfilled all that is required under the divorce decree. The trial court had continuing jurisdiction and authority to consider this issue. As such, while his request may ultimately be denied because: (1) Husband's obligation is non-modifiable; and (2) Husband's obligation under the Final Decree of Divorce has not been extinguished, the trial court was not barred by the doctrine of *res judicata* from considering his Petition to interpret and enforce the Final Decree of Divorce. Based on the forgoing, we hold that the trial court erred in finding that *res judicata* bars consideration of Husband's Petition.

### Interpretation of the Final Decree of Divorce

Husband next argues that the trial court erred in interpreting the Final Decree of Divorce as requiring Husband to pay alimony *in solido* to Wife of one-half of his retirement pay without providing a definite duration for that award. This question requires us to interpret the language in a judgment. "The interpretation of a judgment is a question of law." ***Pruitt v. Pruitt***, 293 S.W.3d 537, 544 (Tenn. Ct. App. 2008) (citation omitted). Accordingly, our review is *de novo* with no presumption of correctness. ***Barnes v. Barnes***, 193 S.W.3d 495, 498 (Tenn. 2006). Judgments are to be construed like other written instruments, ***Konvalinka v. Chattanooga-Hamilton Co. Hosp. Authority***, 249 S.W.3d 346, 356 n.19 (Tenn. 2008), the determinative factor being the intention of the court as gathered from all parts of the

judgment. ***Stidham v. Fickle Heirs***, 643 S.W.2d 324, 328 (Tenn. 1982). Such construction should be given to a judgment as will give force and effect to every word of it, if possible, and make its several parts consistent, effective and reasonable. ***Blue Cross-Blue Shield of Tennessee v. Eddins***, 516 S.W.2d 76, 78 (Tenn. 1974); ***Branch v. Branch***, 249 S.W.2d 581, 582–83 (Tenn. Ct. App. 1952). Generally, trial courts are "in the best position to interpret and construe [their] own orders, even when a trial judge has no independent memory of the proceedings in a cause of action." ***Sharp v. Stevenson***, No. W2009-00096-COA-R3-CV, 2010 WL 786006, at \*5 (Tenn. Ct. App. Mar. 10, 2010) (citing ***Richardson v. Richardson***, 969 S.W.2d 931, 935 (Tenn. Ct. App. 1997)). However, in this case, the trial judge who entered the Final Decree of Divorce is not the same trial judge who considered Husband's instant Petition.

As previously discussed, the Final Decree of Divorce entered by the trial court required Husband to pay Wife "[a]s alimony in solido" one-half of Husband's "retirement/pension plan with the City of Memphis . . . , as of the date of the entry of this Final Decree of Divorce, and to which plan [Husband] has contributed $60,114.96 through March 24, 2000." Husband only argues that he was merely required to pay Wife one-half of his contributions to the City of Memphis retirement/pension plan, or $30,057.48. Because Husband has paid far in excess of that amount, Husband argues that the trial court erred in not ruling that his alimony obligation was extinguished.

Tennessee law recognizes four distinct classes of alimony: (1) alimony *in futuro*, (2) alimony *in solido*, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1). The dispute in this case concerns alimony *in solido*:

> The second type of support, alimony in solido, is . . . a form of long-term support. The total amount of alimony in solido is set on the date of the divorce decree and is either paid in a lump sum payment of cash or property, or paid in installments for a definite term. Tenn. Code Ann. § 36-5-121(h)(1); ***Broadbent*** [***v. Broadbent***], 211 S.W.3d [216,] 222 [(Tenn. 2006)] ("Alimony *in solido* consists of a definite sum of money that is paid in a lump sum or in installments over a definite period of time."). "A typical purpose of such an award would be to adjust the distribution of the parties' marital property." ***Burlew*** [***v. Burlew***], 40 S.W.3d [465,]471 [(Tenn. 2001)]. Alimony in solido "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Tenn. Code Ann. § 36-5-121(d)(5). Unlike alimony in futuro, the other form of

-11-

long-term support, alimony in solido is considered a final judgment, "not modifiable, except by agreement of the parties," and does not terminate upon the death or remarriage of the recipient or payor spouse. Tenn. Code Ann. § 36-5-121(h)(2)–(3); *see* **Riggs** [*v. Riggs*], 250 S.W.3d [453,] 456 n. 3 [(Tenn. Ct. App. 2007)].

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 108 (Tenn. 2011) (footnote omitted).

Here, the trial court interpreted the alimony *in solido* provision as requiring Husband to remit one-half of his entire pension with the City of Memphis to Wife. Husband argues that this interpretation ignores both the statutory requirements of alimony *in solido* as well as the plain language of the alimony provision. First, Husband notes that Tennessee law provides that alimony *in solido* "is an award of a definite sum of alimony and 'may be paid in installments provided the payments are ordered over a definite period of time and **the sum of the alimony to be paid is ascertainable when awarded**.'" **Burlew**, 40 S.W.3d at 471 (emphasis added) (quoting **Waddey v. Waddey**, 6 S.W.3d 230, 232 (Tenn. 1999)). Husband argues that the only interpretation of the language of the alimony provision that includes a sum that is ascertainable at the time the Final Decree of Divorce was entered requires the court to find that Husband was only required to pay one-half of Husband's stated contributions to the City of Memphis retirement/pension plan.

We note that Husband raises no argument in this Court that the trial court erred in interpreting the alimony at issue in this case as alimony *in solido*, rather than as alimony *in futuro* or a non-alimony property division, due to the alimony provision's indefinite amount and duration. Indeed, in his brief, Husband concedes that the issue of whether "Husband owes alimony in solido to Wife for her interest in the City of Memphis retirement/pension plan is res judicata." Instead, Husband only argues that the $60,114.96 figure contained in the alimony provision provides the definite amount and duration for the payments. Thus, any argument that the alimony provision, as written, cannot be classified as alimony *in solido* is waived.[4]

---

[4] Although this issue was not raised by Husband, we note that there is some authority that conditioning the payment of alimony on the lifetime of the obligor does not defeat the trial court's intention to award a party alimony *in solido*. *See* **Towner v. Towner**, 858 S.W.2d 888, 890 (Tenn.1993) ("[T]he mere fact that the duration of the specified monthly payments is determined by [the obligor's] life does not necessarily mean that the provision is [not alimony *in solido*, and therefore,] subject to modification."). Instead, the Tennessee Supreme Court has held that these types of alimony awards are more akin to property settlements that are not subject to modification based on changed circumstances. *See* **id.** at 891 ("The agreement in this case, considered in light of all the circumstances, is essentially a property settlement (Continued...)

-12-

We respectfully disagree with Husband's interpretation of the alimony provision at issue. As previously discussed, in interpreting an order of the court, the "determinative factor" is the "intention of the court as gathered from all parts of the judgment." **Pruitt v. Pruitt**, 293 S.W.3d 537, 543 (Tenn. Ct. App. 2008). "The construction of a judgment should give force and effect to every word of it, if possible, and make all of the parts consistent, effective, and reasonable." *Id.* at 545. Here, the trial court's intention was clear from the face of the Final Decree of Divorce—to provide Wife with her marital interest in the bulk of the marital property, including Husband's various City of Memphis retirement plans.

In this case, several facts appear to be undisputed. First, the parties were married for approximately thirty-three years. Second, Husband worked for the City of Memphis at the time of the parties' divorce and, according to his brief, "during the length of the marriage." Consequently, even Husband concedes in his brief that the "the [City of Memphis retirement/pension] plan constituted a marital asset." As such, Wife was clearly entitled to an equitable division of this asset in the divorce. *See **Cohen v. Cohen***, 937 S.W.2d 823, 828 (Tenn. 1996) (portion of retirement benefits that accrues during marriage constitutes marital property subject to division).[5] Trial courts have "wide latitude in fashioning an equitable division of marital property." **Altman v. Altman**, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005). An award of alimony *in solido* often serves the purpose of "adjust[ing] the

_____

(...continued)
agreement, rather than an order of support."); *see also **Johnson***, 37 S.W.3d at 895 (concluding that "the payments made to [former wife] pursuant to the MDA were periodic distributions of marital property rather than alimony"). In addition, while Courts have held that determining the nature of an alimony award is important when the issue is a requested modification of the award and the award contains no express designation as to the type of alimony awarded, *see **Averitte v. Averitte***, No. M2012-00738-COA-R3-CV, 2013 WL 357602, at *2 (Tenn. Ct. App. Jan 29, 2013) ("Discerning the nature of the award can [ ] be challenging if the language of the decree is not sufficiently descriptive . . . ."), this Court in **Schmidt v. Schmidt**, No. M2004-01350-COA-R3-CV, 2005 WL 2240960 (Tenn. Ct. App. Sept. 15, 2005), considered a number of oft-cited alimony Opinions, concluding "[i]n all of these cases, the presence or absence of contingencies did not change the express description of the form of alimony awarded." **Schmidt**, 2005 WL 2240960, at *6. In this case, the trial court clearly designated the award as an award of alimony *in solido*. Husband filed no appeal of that decision at the time it was entered, nor does he argue that the trial court mis-classified the alimony award at issue. Accordingly, we will not consider whether this was the proper form for an award of alimony *in solido*.

[5] From the parties' briefs, it appears that Husband may have worked for the City of Memphis prior to the parties' marriage. Thus, some of the pension may have been acquired prior to the marriage, and therefore, separate property. Husband, however, does not raise any issue regarding the trial court's finding that the entirety of the City of Memphis retirement/pension plan acquired prior to the parties' divorce constitutes a marital asset. As such, we assume any value in the retirement plan acquired prior to the divorce was marital property subject to division.

distribution of the parties' marital property." ***Burlew***, 40 S.W.3d at 471. While an equitable division of marital property does not always mean an equal division, *see **Robertson v. Robertson***, 76 S.W.3d 337, 341 (Tenn. 2002), other provisions of the Final Decree of Divorce illustrate the trial court's intent to equally divide the bulk of the parties' marital assets, including joint accounts, stocks, bonds, certificates of deposits, a DROP plan with the City of Memphis, and a deferred compensation plan with the City of Memphis. Thus, it is reasonable to conclude that the trial court's intent was to also fashion an equal division of the City of Memphis retirement/pension plan.

Indeed, the alimony provision at issue specifically states that the parties "shall equally divide" the plan, "as of the date of the entry of th[e] Final Decree of Divorce." This language clearly indicates that Wife is entitled to receive one-half of the value of the plan, as of the date of the divorce. It is undisputed that at the time Husband filed the instant Petition, Husband had received over $500,000.00 from the plan at issue. Husband worked approximately one year after the entry of the Final Decree of Divorce. It is unreasonable to conclude that the plan increased in value by over $400,000.00 in just thirteen months, when Husband worked for the City of Memphis for over thirty-three years. Instead, the only reasonable conclusion to be drawn is that while Husband may have only contributed $60,114.96 to the City of Memphis retirement/pension plan by the time of the divorce, the City of Memphis retirement/pension plan had a value far greater. Indeed, Wife testified in an affidavit filed in the trial court that the $60,114.96 figure represented "the amount which Husband paid into the pension plan," rather than the value of the City of Memphis retirement/pension plan at the time of the parties' divorce. Husband points to no evidence in the record disputing Wife's testimony that the $60,114.96 does not accurately reflect the value of the City of Memphis retirement/pension plan at the time the Final Decree of Divorce was entered. Because the trial court's clear intent was to use the alimony *in solido* provision to equally divide the parties' marital property, we cannot agree with Husband that the trial court intended Wife to receive only $30,057.48, an amount that represents less than twelve percent (12%) of the amount that Husband has received from the City of Memphis retirement/pension plan as of the summer of 2014. Thus, we cannot conclude that the inclusion of the $60,114.96 figure in the alimony *in solido* provision was intended to provide a cap on Husband's obligation to pay Wife from the proceeds of his City of Memphis retirement/pension plan. Instead, it appears that the purpose of the $60,114.96 figure was to identify the City of Memphis retirement/pension plan at issue, and distinguish it from Husband's two other City of Memphis accounts, his DROP account and his deferred compensation account. Further, the trial court's decision to distribute this property through alimony rather than a property division is explained by Wife's affidavit—that neither the City of Memphis retirement/pension plan nor the deferred compensation plan "were . . . subject to a Qualified Domestic Relations Order" and therefore, "the payments had to come from [Husband] as they could not come from the City of Memphis directly." The record contains

no transcripts from the original trial, and Husband offers no evidence to dispute Wife's explanation for the trial court's treatment of this property. As such, we can only credit Wife's testimony that the trial court treated the City of Memphis retirement/pension plan as alimony *in solido* due to limitations with how the proceeds could be distributed.

Based on the forgoing, we conclude that the trial court did not err in interpreting the Final Decree of Divorce as requiring Husband to remit to Wife one-half of the total value of the City of Memphis retirement/pension plan, as of the date of the entry of the Final Decree of Divorce. Husband was, therefore, not entitled to terminate his payments once Wife received one-half of Husband's total contributions to the plan. In addition, Husband is not entitled to reimbursement of any overpayment beyond $30,057.48. Although the Final Decree of Divorce clearly states that Wife is only entitled to that portion of the value of the City of Memphis retirement/pension plan that accrued prior to the divorce, Husband raises no issue regarding this fact on appeal, nor did Husband's Petition in the trial court seek a determination of when Husband's alimony obligation would be extinguished based on this fact. Accordingly, we decline to address that issue at this time.

**Attorney's Fees**

Wife next argues the trial court erred in failing to award her attorney's fees in the defense of this action. Wife relies on Tennessee Code Annotated Section 36-5-103(c) to support her request for attorney's fees. As explained by this Court in ***Owens v. Owens***, No. M2012-01186-COA-R3-CV, 2013 WL 3964793 (Tenn. Ct. App. July 30, 2013) perm. app. denied (Tenn. Nov. 13, 2013):

> Reasonable fees may be awarded pursuant to § 36-5-103(c) in actions to enforce a decree for alimony, which has been interpreted as including the situation where an alimony recipient is forced to defend an action to reduce or terminate that alimony. ***Evans v. Evans***, [No. M2002-02947-COA-R3-CV,] 2004 WL 1882586, at *13 (Tenn. Ct. App. Aug. 23, 2004). In addition, a court may award a former spouse attorney's fees as alimony in solido pursuant to § 36–5–101 in a modification or alimony proceeding. *See* ***Evans***, 2004 WL 1882586, at *15 ("ample authority exists to authorize a court to award fees in a modification proceeding on the same basis, and according to the same principles, as a fee award is made in the divorce proceeding and initial award under Tenn. Code Ann. § 36-5-101").
>
> An award of attorney's fees is within the sound discretion

of the trial court, regardless of the legal authority for the award, and will not be reversed on appeal if that discretion is not abused. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); *Evans*, 2004 WL 1882586, at *17 (Tenn. Ct. App. Aug. 23, 2004). A trial court abuses its discretion when it applies an incorrect legal standard, or reaches a decision that is not logical, bases its decision on a clearly erroneous assessment of the evidence, or uses reasoning that causes an injustice to the complaining party. *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 237 (Tenn.2010) (citing *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)).

*Owens*, 2013 WL 3964793, at *6. Considering the record as whole, we cannot conclude that the trial court abused its discretion in requiring both parties to pay their respective attorney's fees. The trial court's denial of Wife's request for attorney's fees is, therefore, affirmed.

Wife also seeks her attorney's fees on appeal pursuant to the same statutory authority. "Whether to award attorney's fees on appeal is a matter within the sole discretion of this Court." *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec.17, 2007) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App .1995)). In determining whether an award of fees on appeal is appropriate, we consider "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." *Hill*, 2007 WL 4404097, at *6 (citing *Dulin v. Dulin*, 2003 WL 22071454, at * 10 (Tenn. Ct. App. Sept. 3, 2003)). In this case, the record contains little evidence of Wife's ability to pay the requested fees. In addition, while Wife ultimately prevailed in retaining her alimony payments, Wife did not prevail on her argument that Husband's Petition was barred by the doctrine of *res judicata*, which issue constituted a good faith basis for Husband to appeal the trial court's ruling. Under these circumstances, we exercise our discretion to decline Wife's request for attorney's fees on appeal.

## Conclusion

The judgment of the Circuit Court of Shelby County is reversed in part and affirmed in part. Costs of this appeal are taxed one-half to Appellant William F. Young, Jr., and his surety, and one-half to Appellee Josephine Whitthorne Young, for all of which execution may issue if necessary. This cause is remanded to the trial court for the collection of costs and all further proceedings as may be necessary and are consistent with this Opinion.

_____
J. STEVEN STAFFORD, JUDGE